UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carol Jones,

      Plaintiff,

v.

Unum Provident Corporation,

      Defendant.

Civil No. 07-1273 (JNE/SRN)
ORDER

Mark M. Nolan, Esq., Nolan, MacGregor, Thompson & Leighton, appeared for Plaintiff Carol Jones.

Terrance J. Wagener, Esq., Krass Monroe, P.A., appeared for Defendant Unum Provident Corporation.

After Unum Provident Corporation (Unum) denied her claim for benefits, Carol Jones brought this action against Unum under the Employee Retirement Income Security Act of 1974 (ERISA) to obtain benefits under an employee benefit disability plan maintained by her former employer, Fabyanske, Westra, Hart & Thomson, P.A. (Fabyanske). The case is before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court grants Unum's motion and dismisses this case.

## I.     BACKGROUND

From 1999 to 2005, Fabyanske employed Jones as a legal secretary. During Jones's employment at Fabyanske, the law firm switched insurers from Fortis Benefits Insurance Company (Fortis) to Unum. Portions of the Fortis and Unum policies, summaries of the claims submitted by Jones to the insurers, and a brief review of her employment in 2004 and 2005 appear below.

**A.      The Fortis policy**

The Fortis policy provides that Fortis will pay long term disability insurance benefits if a claimant becomes disabled while insured under the policy and satisfies a qualifying period of three months.  In relevant part, "disability" or "disabled" is defined as:

> during a *period of disability* (including the *qualifying period*), an *injury*, sickness, or pregnancy requires that you be under the *regular care and attendance* of a *doctor*, and prevents you from performing at least one of the *material duties* of your regular occupation.

To be eligible for insurance under the Fortis policy, a person must (1) "be a member of an *eligible class*," (2) "complete any Service Requirement shown in the Schedule by continuous service with the employer, the *policyholder*, or an *associated company*," and (3) "give us *proof of good health*, if required."  "Eligible classes" are defined as "[e]ach active *full-time* employee of the *policyholder* or an *associated company*, working in the United States of America, except any temporary or seasonal workers."  A covered person's insurance ends when the person is "no longer in an *eligible class*" or the person "stops *active work*," which is defined as "working *full-time* for the *policyholder* or an *associated company* at your usual place of business."  "If a person re-enters an Eligible Class within 12 months after insurance ends, the person will not have to complete the Service Requirement again."  "Full-time" is defined as "working at least 30 hours per week, unless indicated otherwise in the *policy*."  Under certain circumstances, the insurance may continue even if a person is unable to perform active work:

> If a person is unable to perform *active work* for a reason shown below, the *policyholder* may continue the person's insurance.  The continuance cannot be more than the maximum continuance shown below.  Continuance must be based on a uniform policy, and not individual selection.
>
> The maximum continuance for *long term disability insurance* is the longest applicable period described below:
>
> • the Maximum Benefit Period, for *injury*, sickness, or pregnancy covered under the *policy* . . . .

The Fortis policy excludes coverage for any disability caused by a pre-existing condition:

> We will not pay benefits for any *disability* caused by a pre-existing condition (defined below) until you have been at *active work* for a full day following the earlier of:
>
> - 3 consecutive months, ending on or after the day you became insured under the *long term disability insurance policy*, during which you do not consult with or receive advice from a licensed medical or dental practitioner or receive medical or dental care, treatment or services, including taking drugs, medicine, insulin, or similar substances, for that condition; or
>
> - 12 consecutive months during which you are continuously insured under the *long term disability insurance policy*.
>
> A "pre-existing condition" means an *injury*, sickness, or pregnancy or any related *injury*, sickness, or pregnancy for which you:
>
> - consulted with or received advice from a licensed medical or dental practitioner; or
>
> - received medical or dental care, treatment, or services, including taking drugs, medicine, insulin, or similar substances
>
> during the 3 months that end on the day before you became insured under the *long term disability insurance policy*.

**B.     The Unum policy**

Effective January 1, 2005, Fabyanske replaced the Fortis policy with a policy issued by Unum. In part, the Unum policy defines disability as:

> **HOW DOES UNUM DEFINE DISABILITY?**
>
> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
>
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

3

The policy defines "limited" to mean "what you cannot or are unable to do." Like the Fortis policy, the Unum policy excludes coverage for "any disabilities caused by, contributed to by, or resulting from" a pre-existing condition. The Unum policy's definition of pre-existing condition is:

> **WHAT IS A PRE-EXISTING CONDITION?**
>
> You have a pre-existing condition if:
>
> - you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; and
>
> - the disability begins in the first 12 months after your effective date of coverage.

If a claimant has a disability due to a pre-existing condition when an employer changes insurance carriers to Unum, Unum will nevertheless make payments under certain conditions:

> **WHAT IF YOU HAVE A DISABILITY DUE TO A PRE-EXISTING CONDITION WHEN YOUR EMPLOYER CHANGES INSURANCE CARRIERS TO UNUM?  (Continuity of Coverage)**
>
> Unum may send a payment if your disability results from a pre-existing condition if you were:
>
> - in active employment and insured under the plan on its effective date; and
>
> - insured by the prior policy at the time of the change.
>
> In order to receive a payment you must satisfy the pre-existing condition provision under:
>
> 1. the Unum plan; or
>
> 2. the prior carrier's plan, if benefits would have been paid had that policy remained in force.
>
> If you do not satisfy Item 1 or 2 above, Unum will not make any payments.

**C.     Jones's claim under the Fortis policy**

In January 2004, Jones was unable to continue to work at Fabyanske because of major depression. In April 2004, she submitted a claim for long-term disability benefits to Fortis. By letter dated April 14, 2004, Fortis approved Jones's claim and agreed to pay benefits up to the earlier of her return to work or August 1, 2004. On June 8, 2004, Jones informed Fortis that her psychiatrist, Dr. Richardson, had released her to return to work and that she disputed his assessment of her ability to return to work. Two days later, Fortis suspended further payment of disability benefits and requested additional information.

On August 26, 2004, Fortis notified Jones that it had denied her claim because she did not satisfy the Fortis policy's disability definition after June 7, 2004. Fortis's review of Jones's records revealed that Jones saw a psychiatrist, Dr. Koller, on June 21, 2004, for an initial psychiatric evaluation. Dr. Koller indicated that Jones had expressed dissatisfaction with Dr. Richardson for releasing her to return to work. Dr. Koller indicated that he would not place Jones on disability but agreed to treat her.

On July 7, 2004, another psychiatrist, Dr. Hogan, conducted an initial evaluation of Jones. Dr. Hogan reported that Jones had terminated treatment with Dr. Richardson due to Dr. Richardson's loss of objectivity, that Jones did not want to return to work, and that Jones wanted Social Security benefits. Dr. Hogan declined to accept Jones as a patient without reviewing Dr. Richardson's notes.

On July 15, 2004, Jones saw another psychiatrist, Dr. Heefner, for an initial evaluation. Jones explained to Dr. Heefner that she sought a psychiatrist to support her disability application. Dr. Heefner indicated that Jones had attempted to return to work but was currently unable to work.

5

Two days later, Fabyanske informed Fortis that Jones had provided a return-to-work slip from Dr. Richardson in which he released Jones to work 20 hours per week for two weeks starting June 28, 2004, then 30 hours per week for two weeks, and then full-time work. Jones worked part-time from June 28 to July 15, when she stopped working.

On July 22, 2004, Fortis contacted Dr. Richardson's office to determine whether work limitations existed from June 7 to Jones's return to part-time work on June 28 or her cessation of work on July 15. A nurse in Dr. Richardson's office indicated that Dr. Richardson had extended Jones's disability to June 28 subject to Jones's agreement to terminate treatment with him.

Dr. Snoxell, a certified rehabilitation psychologist in Fortis's Behavioral Health Services Department, reviewed Jones's records. Dr. Snoxell discerned no indication of psychiatric symptoms that would impact Jones's ability to work full time.

Based on its review of Jones's records, Fortis concluded that Jones did not satisfy the Fortis policy's definition of disability. Fortis therefore declined to approve Jones's claim for benefits beyond June 7, 2004, and denied her claim. Jones did not appeal.

**D.     Jones's return to work**

As noted above, Jones returned to work part-time at Fabyanske from June 28 to July 15, 2004. For the next two months, she did not work at Fabyanske. On September 20, 2004, she returned to Fabyanske and worked part-time until October 4, 2004, when she resumed full-time work. With the exception of a one-week hospitalization in November due to a lung infection, Jones continued to work full-time at Fabyanske until February 25, 2005, when she stopped working due to leg pain. The next month, Fabyanske terminated her employment.

**E.     Jones's claim under the Unum policy**

In March 2005, Jones submitted a claim for disability benefits to Unum. In support, she stated that a severe scratch to her leg by a dog in January 2005 produced an infection that disabled her because she could not walk. An attending physician's statement contained other diagnoses. By letter dated July 26, 2005, Unum denied Jones's claim. Unum noted that Jones had experienced a variety of physical and psychiatric conditions:

> You initially indicated that the current disability being reported was due to leg pain as result of an infection from a dog scratch. It is noted from our review that that condition would have resolved. We further note that your continued absence from work was due to an on-going psychological condition. Additionally, you have also noted and medical records reflect treatment for lung problems as well as arthritis/fibromyalgia symptoms. We are unclear to what extent the lung conditions as well as your arthritis/fibromyalgia symptoms would be disabling.

Unum explained that Jones's effective date of coverage under the Unum policy was January 1, 2005. Consequently, the policy's definition of pre-existing condition used the months of October, November, and December 2004 to determine whether Jones had a pre-existing condition. Unum's review of Jones's medical records revealed that she had treatment for her disabling conditions during these months.

Unum also explained why the Unum policy's continuity-of-coverage provision did not apply. According to Unum, Jones was no longer considered disabled under the Fortis policy as of August 26, 2004. Because Jones did not return to full-time work upon Fortis's determination that she was no longer disabled, Unum concluded that Jones had lost eligibility for coverage under the Fortis policy. Upon her return to full-time work at Fabyanske, she re-entered an eligible class and became eligible for coverage after a waiting period. Unum determined that the effective date of Jones's insurance under the Fortis policy was December 1, 2004. Because Jones became insured on December 1, 2004, Unum explained that she was subject to the Fortis

policy's exclusion for disability caused by a pre-existing condition and that she must have been treatment free from September 1 to November 30, 2004, to avoid application of the exclusion. Having reviewed Jones's medical records, Unum determined that she had treatment for her allegedly disabling conditions during this period. Consequently, the Fortis policy's exclusion for disability caused by a pre-existing condition applied.

On March 16, 2006, Jones appealed Unum's denial of her claim. Jones maintained that Unum had denied her claim based on an erroneous interpretation of the Fortis policy and without the benefit of a decision by the Social Security Administration (SSA). According to Jones, Unum recognized that she would be eligible for benefits if her condition was not pre-existing under the Fortis policy. She claimed that Unum erred in determining that her condition was pre-existing under the Fortis policy. Jones also informed Unum of the SSA's decision dated November 14, 2005, in which the SSA found that Jones had been disabled due to her mental impairments from January 7, 2004, to the date of the SSA's decision.

On May 24, 2006, Unum affirmed its decision to deny Jones's claim for benefits. Unum evaluated Jones's medical conditions with regard to her functional capacity beginning February 25, 2005, her last day of work at Fabyanske. Unum concluded that there was "no evidence of a physically based medical condition that would cause a loss of functional capacity on or after February 25, 2005, [Jones's] last day of work, through and beyond the policy elimination period, that would preclude [Jones] from working." Unum also evaluated Jones's psychiatric condition. It stated that its medical consultant opined that "additional information would be required to establish the presence of global impairment precluding work capacity due to [Jones's] psychiatric diagnoses, due to conflicting documentation in the medical records reviewed." Unum nevertheless gave significant weight to the SSA's decision and decided to "respect[] the

8

conclusions set for[th] by the [SSA] ruling that [Jones] is unable to sustain work activity due to her psychiatric condition." Thus, Unum concluded that Jones had a disability date of February 26, 2005.

Having found Jones disabled, Unum evaluated Jones's eligibility for benefits. Unum explained that Jones's effective date of coverage under the Unum policy was January 1, 2005. Because Jones treated her psychiatric condition in the preceding three months and her disability began within twelve months of her effective date of coverage, Unum concluded that the Unum policy's exclusion for disability due to a pre-existing condition applied. Unum then examined whether Jones was eligible for benefits under the continuity-of-coverage provision. Unum explained that it had contacted Fortis to determine Jones's coverage status under the Fortis policy. According to Unum, Fortis reported that Jones's coverage had ended on June 8, 2004, when she no longer satisfied the policy's definition of disability, and resumed on October 4, 2004, when she returned to full-time work at Fabyanske. The Fortis policy's exclusion for disability caused by a pre-existing condition applied to any disability arising after Jones's new coverage date of October 4. Because Jones had treatment for depression during the three months before October 4, 2004, Unum concluded that Jones had a pre-existing condition under the Fortis policy. The Fortis policy's exclusion for disability due to a pre-existing condition applied, Unum reasoned, because the date of Jones's disability, February 26, 2005, fell within the first twelve months after her effective date of coverage, October 4, 2004, and because her records reflected "uninterrupted consultation, treatment, and medication therapy for anxiety and depression."

On October 5, 2006, Jones asked Unum to reverse its decision to uphold the denial of her claim for benefits. Less than two weeks later, Unum affirmed its decision to deny Jones's claim. Approximately four months later, Jones brought this action.

## II.     DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A participant in an ERISA plan may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2000). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If a plan gives discretion to the administrator to construe uncertain terms or to make eligibility determinations, then "the administrator's decision is reviewed only for 'abuse . . . of his discretion,' and the administrator's interpretation of uncertain terms in a plan 'will not be disturbed if reasonable.'" *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99

(8th Cir. 2005) (en banc) (quoting *Bruch*, 489 U.S. at 111).  A court considers several factors in determining whether the administrator's interpretation is reasonable:

> [The factors] include "whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan."

*Id.* at 999 (quoting *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)).

Here, the Unum policy states:  "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."  The Unum policy also states:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan.  Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

These provisions grant Unum the discretion to make benefit determinations and interpret the policy.  *See Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 580-81 (8th Cir. 2008).  In considering whether Unum abused its discretion in denying Jones's claim, the Court considers "only the evidence before the plan administrator when the claim was denied."[1]  *Heaser v. Toro Co.*, 247 F.3d 826, 833 (8th Cir. 2001); *see King*, 414 F.3d at 999.

If a plan gives discretion to an administrator or fiduciary that operates under a conflict of interest, that conflict must be weighed as a factor in determining whether an abuse of discretion occurred.  *Bruch*, 489 U.S. at 115.  A plan administrator that both evaluates claims for benefits

---

[1] In an affidavit filed on August 18, 2008, Jones's counsel submitted two exhibits, Exhibits A and B, that are not part of the administrative file.  The Court declines to consider them.

11

and pays benefits claims operates under a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008); *Wakkinen*, 531 F.3d at 581. The parties do not dispute that Unum operated under a conflict of interest.

As noted above, Unum denied Jones's claim based on the exclusions for disability due to a pre-existing condition in the Unum and Fortis policies. Unum does not dispute Jones's disability, and Jones does not contest the applicability of the Unum policy's exclusion for disability due to a pre-existing condition. Thus, the parties' dispute turns on the continuity-of-coverage provision's requirement to "satisfy the pre-existing condition provision under . . . the prior carrier's plan, if benefits would have been paid had that policy remained in force."

Unum maintains that Jones would not have satisfied the Fortis policy's exclusion for disability caused by a pre-existing condition had the Fortis policy remained in force. Unum asserts that Jones would have been subject to Fortis's determination that she was no longer disabled as of June 8, 2004, that her insurance would have ended because she did not return to full-time work upon cessation of her disability, and that she would have regained eligibility for insurance upon her return to full-time work in October 2004. Because she became insured under the Fortis policy in October 2004, Unum argues, she would have been subject to the Fortis policy's exclusion for disability caused by a pre-existing condition. According to Unum, Jones had a pre-existing condition because she had treatment for her psychiatric condition in the three months before she became insured in October 2004. Unum maintains that she could not satisfy the Fortis policy's exclusion for disability caused by a pre-existing condition because the disability occurred within twelve months of her resumption of insurance and she was not free of treatment for her psychiatric condition for three consecutive months after October 2004.

Jones responds that her insurance under the Fortis policy did not lapse. She maintains that termination of her employment is the only way that she could have lost her coverage and that she maintained her status as a full-time employee of Fabyanske throughout 2004. Consequently, she contends that Unum abused its discretion in denying her claim because she was not subject to the Fortis policy's exclusion for disability caused by a pre-existing condition.

Jones's argument that her status as a full-time employee throughout 2004 prevented her coverage under the Fortis policy from ending ignores the plain language of the Fortis policy regarding when a covered person's insurance ends. As noted above, the Fortis policy provides that a covered person's insurance ends when the person is no longer in an eligible class or when the person stops active work. Under the Fortis policy, eligible classes are defined in part to include active full-time employees, full-time means working at least thirty hours per week, and active work means working full-time for the policyholder at the employee's usual place of business. Fortis determined that Jones was no longer disabled as of June 8, 2004, and she first returned to full-time work at Fabyanske approximately four months later. Under these circumstances, the Fortis plan plainly provides that her insurance ended. *See Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 491-92 (8th Cir. 1996).

The cases cited by Jones to support her contention that her status as a full-time employee prevented termination of her insurance do not require a different conclusion. First, Jones cites dicta in *Granite v. Guardian Life Insurance Co. of America*, 544 F. Supp. 2d 833 (D. Minn. 2008). In that case, the district court admonished an insurer to give a more reasonable interpretation to provisions in a policy regarding termination of coverage than it gave to provisions regarding commencement of coverage. *Granite*, 544 F. Supp. 2d at 848. Although the termination provisions were "facially absolute," the district court doubted that coverage

13

ended any time an employee failed to work a requisite number of hours. *Id.* Otherwise, any employee who took vacation or a couple of sick days would lose coverage. *Id.* Here, Jones's coverage ended not because of a vacation or a few sick days. Instead, her coverage ended because she did not engage in full-time work for approximately four months. Accordingly, the Court does not find Jones's reliance on *Granite* persuasive.

Next, Jones cites *Lickteig v. Business Men's Assurance Co. of America*, 61 F.3d 579 (8th Cir. 1995). In that case, an insurer concluded that the plaintiff was not eligible for coverage under a policy because he was not an "active employee" when the insurer began providing insurance to the plaintiff's employer. *Lickteig*, 61 F.3d at 582. The Eighth Circuit interpreted the policy's definitions of "active employee" and "sick leave" to mean that "an active employee is one who is not temporarily absent from work caused by an illness, injury or pregnancy." *Id.* at 584. Because the plaintiff was not scheduled to work on the day that the insurer's coverage began, the plaintiff was not temporarily absent for any of the stated exclusionary reasons. *Id.* Consequently, the plaintiff was entitled to coverage as an active employee. *Id.* The Eighth Circuit also recognized that the insurer could have limited eligibility for benefits to employees who were actively working. *Id.* at 585. Here, the Fortis plan expressly provides that coverage ends when a person is no longer in an eligible class (*i.e.*, the person is no longer an active full-time employee) or when the person stops active work (*i.e.*, the person stops working at least thirty hours per week at the person's usual place of business). Thus, the Court is not persuaded by Jones's reliance on *Lickteig*.

Finally, Jones cites *Reese v. Brookdale Motors, Inc.*, 567 N.W.2d 83 (Minn. Ct. App. 1997). *Reese* is readily distinguishable. In that case, a group health plan's eligibility requirements included "working a minimum of 30 hours per week." *Reese*, 567 N.W.2d at 85.

Reasoning that the plan did not require the employee to be "actively working" to be eligible, the district court interpreted the requirement to refer to an employee's status as a full-time employee rather than actual performance of full-time work. *Id.* at 87. The court of appeals affirmed. *Id.* Unlike the policy at issue in *Reese*, the Fortis policy requires actual performance of full-time work.

For the reasons set forth above, Unum's interpretation of the Fortis policy's provision regarding when a covered person's insurance ends comports with the policy's plain language. As to the remaining *Finley* factors, the parties do not give them extensive treatment. Jones contends that the interpretation is inconsistent with the goal of the plan, compensation of disabled employees, because the interpretation turns every vacation day, sick day, or personal leave into a lapse in coverage. The Court rejects this contention because this case involves a failure to engage in full-time work for approximately four months.

Next, Jones asserts that the interpretation renders recurrent disability provisions of the Fortis policy meaningless. The Court is not persuaded. The provision identified by Jones retains force for individuals who become disabled, return to work upon cessation of the disability (*i.e.*, without a lapse in coverage), and then become disabled again within a certain amount of time.

Third, Jones contends that the interpretation conflicts with the requirements of ERISA because it ignores the recurrent disability provisions of the Fortis policy, Jones's retention of her status as a full-time employee, and Fabyanske's payment of premiums to Fortis. With regard to the recurrent disability provisions and Jones's status as a full-time employee, the Court rejects Jones's argument for the reasons set forth above. The Court discusses Fabyanske's payment of premiums below.

Finally, Jones contend that Unum has not interpreted the recurrent disability provisions consistently because Unum, as Paul Revere Life Insurance Company, concluded that her February 2005 disability was a recurrence of her January 2004 disability under an individual policy issued by Paul Revere to Jones in January 1986. The Court is not persuaded. As an individual policy, the Paul Revere policy differs from the group policy issued by Fortis to Fabyanske with regard to termination of insurance.

Jones also asserts that "there is nothing in the administrative file that suggests that the Fabyanske firm stopped paying premiums for Ms. Jones." In *Sippel v. Reliance Standard Life Insurance Co.*, 128 F.3d 1261 (8th Cir. 1997), the Eighth Circuit stated, "In some circumstances receipt of a premium can work an estoppel against an insurance company, but we do not believe, at least in an ERISA case, that this can occur when the language of the policy is as clear as it is here." 128 F.3d at 1263. Here, Unum requested information on March 23, 2006, from Fabyanske to determine whether Jones's insurance under the Fortis policy had terminated. The request included information about payment of premiums. In a facsimile dated April 1, 2006, Fabyanske sent Fortis's billing records for Jones to Unum. The records reveal that premiums were paid for the billing periods from April 1 to June 1, 2004. For the billing periods from June 1 to September 1, 2004, the records indicate that premiums were waived and that no premiums were paid for Jones.[2] The Fortis policy plainly provides that Jones's insurance ended due to the four-month period during which she did not engage in full-time work at Fabyanske. To the extent Jones suggests that coverage continued under the Fortis policy due to continued premium payments on her behalf, the Court rejects the argument.

---

2   Exhibit B to the August 18, 2008, affidavit of Jones's counsel, were the Court to consider it, reveals that premium payments to Fortis for Jones resumed in the billing period starting November 1, 2004.

Finally, Jones asserts that she received neither a notice of conversion rights nor a notice under the Consolidated Omnibus Budget Reconciliations Act from Fortis or Fabyanske in 2004. The Court need not consider the alleged violations by Fortis and Fabyanske because neither is a defendant here. Although Jones moved to amend her Complaint to add Assurant Employee Benefits, formerly known as Fortis, as a defendant, she later withdrew the motion.

In short, Jones is not entitled to payments pursuant to the Unum policy's continuity-of-coverage provision because she cannot satisfy the exclusions for disabilities due to pre-existing conditions in the Fortis and Unum policies. Notwithstanding the conflict under which Unum operated, Unum did not abuse its discretion in denying Jones's claim.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Unum's Motion for Summary Judgment [Docket No. 14] is GRANTED.

2. Jones's Motion for Summary Judgment [Docket No. 19] is DENIED.

3. This case is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 28, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge